Co. were unable to meet freight charges. On November 30 the Knickerbocker Corporation was indebted to taxpayer in the sum of $45,395.18. A few small shipments were made after that date. On December 14, 1920, approximately $36,500 was paid on the account and thereafter no other shipments were made.

During December, the Knickerbocker Corporation informed taxpayer that it was in bad shape financially, but threatened to bring suit against taxpayer for damages for failure to make deliveries in accordance with the contract. The taxpayer had at all times been in default in its deliveries under the contract. Fearing that the Knickerbocker Corporation might go into bankruptcy and that taxpayer would be held liable for substantial damages, taxpayer agreed to take notes in payment of its claim and to cancel the contract upon the further payment of $5,000 in notes. This arrangement was made in the latter part of December, 1920. Subsequently, early in January, 1921, the agreement was reduced to writing, general releases were exchanged, and the taxpayer received notes of Hennevig & Co. to the order of Knickerbocker Corporation, endorsed by Knickerbocker Corporation to its order. The balance due taxpayer on December 31, 1920, was $21,235.20. The notes received by taxpayer amounted to $25,000, of which $20,000 was considered to be for the amount due and $5,000 for cancellation of the contract. The account was charged off its books by taxpayer in December, 1920.

Hennevig & Co. went into bankruptcy in February, 1921. In April, 1921, the notes were turned over to an attorney for collection from the Knickerbocker Corporation. Investigation disclosed that the Knickerbocker Corporation had ceased all business and was without any known assets, and no legal action was taken or collection made.

DECISION.

The determination of the Commissioner is approved.

---

APPEAL OF HENRY RIFFEL.

Docket No. 3576. Submitted October 17, 1925. Decided January 26, 1926.

Benjamin Mahler, Esq., for the taxpayer.
John F. Greaney, Esq., for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency in estate tax, in the sum of $9,621.94, on the estate of Henry Riffel, who

died March 24, 1922. The deficiency arose from the inclusion by the Commissioner in the gross estate of the decedent of certain property transferred to his wife and son by deeds executed and delivered in the year 1910, which transfer the Commissioner held was intended to take effect in possession or enjoyment at or after decedent's death. A portion of the deficiency also resulted from the disallowance of a portion of the administration expenses.

FINDINGS OF FACT.

Henry Riffel died testate March 24, 1922. Emilia Riffel, his surviving spouse, was appointed and is now the executrix of said estate.

The decedent and his wife, for over 50 years prior to December, 1910, had been engaged in the retail butcher business in and about New York City. Together, with a son, they devoted all their time to the business. The wife worked in the shop from 7 a. m. to 7 p. m. each day, taking orders and acting as cashier. She looked after the money and made the deposits in the bank in her husband's name. The son also worked long hours but only drew money for his incidental expenses. During this time the business had been prosperous and the profits were invested in real estate. Having accumulated considerable income-producing property, and desiring to rest from his labors, the decedent, in December, 1910, sold out and retired from business. Feeling that the efforts of the wife and son had contributed materially to the amassing of his fortune, he transferred to his wife and son certain of the real estate of a value aggregating $261,500. The transfer was made by deeds absolute on their face, with no written restrictions. The deeds were actually delivered in December, 1910, although they were not recorded until after the death of the husband.

The decedent, prior to 1910, employed a real estate firm, as agents, to manage the real property, collect the rents, and make certain investments from time to time. These agents would remit the net rents in the name of Henry Riffel. After the transfer of the said real estate, the arrangement was still continued and the same firm was employed to handle the business. In the transactions with this firm there was no segregation of the income derived from this property and the property of the decedent, but the remittances continued in the name of the decedent during his lifetime. The wife usually handled the finances and, upon the receipt of the money from the real estate, would deposit it in her husband's name. The wife kept no separate bank account and wrote no checks. The portion of the real estate transferred to the son, however, was personally managed by the son and not by the realty firm. The husband and

wife, subsequent to 1910, kept no accurate separate account of their respective incomes. They both put all their receipts and income in the one account. Included in the account was approximately $17,000 received by the wife from her mother prior to 1910.

During the period from 1914 to 1920, the decedent invested a portion of this joint account, so accumulated, in first mortgages of the value of $110,000, which he delivered to his wife and son. In 1917 he executed a will and left an annuity of $5,000 to his daughter, a life estate to his wife, and the residue of the estate to his son.

The estate-tax return showed a gross estate of $223,833.49 and a net estate of $169,871.26. The Commissioner increased the gross estate by including therein the transfers made in 1910 of the value of $261,500, on the ground that the transfers were intended to take effect in possession or enjoyment at or after death.

In the return the executrix claimed a deduction of $2,548.33 as commission as executrix, and $9,000 as attorney fees. The commission of the executrix had not been paid, but $6,270 had been paid as attorney fees. The Commissioner allowed a deduction of $6,270 as attorney fees, but no deduction for the commission of the executrix, as the same had not been paid. The estate was still in process of administration and considerable administrative work remained to be done before the closing of the estate and the fixing of fees by order of the court.

#### DECISION.

The deficiency determined by the Commissioner is disallowed.

---

## APPEAL OF MEAD CONSTRUCTION CO.

Docket No. 4843.   Submitted November 5, 1925.   Decided January 26, 1926.

> Amounts withheld by a city from a paving contractor out of the contract price as a deposit to assure proper repairs during a specified period are income under the accrual system.

*Merle Walker, Esq.*, and *Albert H. Winter, C. P. A.*, for the taxpayer.

*A. H. Fast, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

The Commissioner determined a deficiency of $5,212.64 in income and profits tax for 1922, from which the taxpayer appeals. The issue depends upon whether the amount of a so-called deposit held by the city in connection with the performance of contracts for public work is within the taxpayer's income.